IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHAKEEN J. DAVIS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-18-1243 |
| GWENDOLYN OLIVER, et al., | * | |
| Defendants. | * | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Gwendolyn Oliver and Donna Hansen's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 18). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant Defendants' Motion and dismiss the Complaint without prejudice.

## I.   BACKGROUND[1]

Plaintiff Shakeen J. Davis is a federal pre-trial detainee housed at the Chesapeake Detention Facility ("CDF") in Baltimore, Maryland. (Compl. at 2, ECF No. 1). Oliver was the Acting Warden at CDF, and Hansen was the Acting Assistant Warden at CDF.[2] (Id. at

---

[1] Unless otherwise noted, the facts outlined here are set forth in Davis's Complaint (ECF No. 1). To the extent the Court discusses facts that Davis does not allege in his Complaint, they are uncontroverted and the Court views them in the light most favorable to Davis. The Court will address additional facts when discussing applicable law.

[2] Oliver has retired, and Hansen is now the Security Chief at the Metropolitan Transition Center. (Mem. Supp. Mot. Dismiss Altern. Mot. Summ. J. ["Defs.' Mot."] at 1 n.1, n.2, ECF No. 18). The Court will direct the Clerk to correct the spelling of Hansen's name on the docket.

1). Davis arrived at CDF on February 24, 2017 and has since experienced various "harsh and unsanitary living conditions" that have caused him to live in "huge discomfort." (Id. at 1, 5). In the winter, the CDF "jail tier" is "freezing cold" due to a "faulty heating system." (Id. at 2). As a result, there have been times when Davis's "hands, feet and other body parts were completely numb." (Id. at 2–3). In January 2018, Davis and other inmates were briefly transferred to the Jessup Correctional Institution because CDF was so cold. (Id. at 3). When Davis returned to CDF, the temperature on his tier was below 30 degrees. (Id.).

CDF has the opposite problem in the warmer months: due to lack of air conditioning, jail "thermostats read off inhumane temperatures over 100 degrees." (Id.). Davis has asthma, so the conditions at CDF in the summer make it difficult for him to breathe properly. (Id.). Davis sought medical treatment, but "medical" instructed him to stay hydrated with ice water even though ice is rarely available. (Id.).

According to Davis, the cells at CDF were designed to house only one inmate yet now typically hold two. (Id. at 3–4). There is only one shower for every twenty-four inmates, and the showers are not cleaned properly and contain mold. (Id. at 4). There is no cafeteria, and the kitchen has been closed repeatedly, "sometimes for weeks." (Id.). CDF also has a pest problem, such that inmates have found insects in their food. (Id.). There is no library, so Davis has "no way to expand [his] mind." (Id. at 4). Further, there is no inside gym at CDF, and the outdoor area has "one basketball goal and nothing else whatsoever." (Id.). Davis is not permitted to go outside often—even less when he is on

segregation. (Id. at 4–5). CDF officials have erroneously calculated Davis's segregation days based on state, rather than federal, guidelines. (Id. at 5).

Davis has "put in various Grievance forms," the "majority" of which received no response. (Id. at 2). In response to certain complaints, Davis "was told they would look more into the matter." (Id.). The most recent complaint Davis himself filed, pertaining to "the hot water being shut off with no notice," received no response. (Id. at 5–6). Davis never appealed the disposition of his complaints because he was not aware that he had that option. (Id. at 2).

On April 27, 2018, Davis sued Defendants. He alleges that the conditions at CDF "exceed[] the punishment that [Davis] deserve[s]" and have left him "emotionally distressed and mentally distraught." (Id. at 5). Davis seeks $150,000 in damages or a "reduced jail sentence for any sentence imposed on me." (Id. at 6).[3]

On January 16, 2019, Defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 18).[4] On January 28, 2019, Davis filed an Opposition. (ECF No. 20). To date, the Court has no record that Defendants filed a Reply.

---

[3] The Court is without the authority, in this civil case, to reduce any sentence Davis receives in his criminal case.

[4] Pursuant to the dictates of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), on January 17, 2019, the Clerk informed Davis that: Defendants had filed a dispositive motion; he had seventeen (17) days in which to file a written opposition to the motion, including any exhibits or affidavits; and if he failed to respond, the Court may dismiss this case or enter judgment against him.

Defendants argue that they are entitled to dismissal of, or judgment in their favor on, the claims against them because Davis has not administratively exhausted his claims and because the Complaint does not state a claim upon which relief can be granted. Davis does not respond to the administrative exhaustion argument and only attempts to rebut Defendants' evidence, not their legal arguments about his claims. The Court agrees with Defendants that Davis has not exhausted his administrative remedies.

## II. DISCUSSION

### A. Conversion

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Suppls.)). The Court may consider part of such a motion under Rule 12(b)(6) and part under Rule 56. See Pitts v. Druckman, No. PWG-17-3546, 2019 WL 121016, at *4 (D.Md.

Jan. 4, 2019), aff'd, 771 F.App'x 304 (4th Cir. 2019); Dale v. Maryland Dep't of Transp., No. ELH-13-191, 2015 WL 221628, at *5 (D.Md. Jan. 15, 2015), aff'd sub nom. Dale v. Maryland Dep't of Transportation, 672 F.App'x 323 (4th Cir. 2017).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council, 721 F.3d 264, 281 (4th Cir. 2013). When movants expressly caption their motion "in the alternative" as one for summary judgment and submit matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified

5

reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

Here, Defendants caption their Motion in the alternative for summary judgment and attach documents beyond the Complaint for the Court's consideration. In his Opposition, Davis does not respond in any way to Defendants' argument that he has not exhausted his administrative remedies, much less state that discovery is required on that issue or request such discovery. Both requirements for conversion have therefore been satisfied. See Greater Balt. Ctr., 721 F.3d at 281. Accordingly, the Court will treat Defendants' Motion as one for summary judgment with respect to the exhaustion issue.

Davis does, however, request discovery with regard to one of his substantive claims—that CDF was unheated during the winters of 2017 and 2018—and explains why that discovery is necessary to oppose the Motion and prove his claim. Davis requests "the recorded records of the temperatures in housing unit 'Delta Pod #2' from February 2017 – December 2017 and January 2018 – December 2018," which he asserts will show "the inhumane temperatures" he endured and "prove that no heat was installed." (Pl.'s Opp. at 2, ECF No. 20). Though Davis has not submitted an affidavit, the Court will not elevate form over substance; the request Davis included in his Opposition is sufficiently specific to satisfy Rule 56(d). As a result, the Court will not convert Defendants' Motion with respect to their arguments that Davis has failed to state a claim.

**B.** **Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor.

Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**C.     Analysis**

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2018). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see Chase v. Peay, 286 F.Supp.2d 523, 528 (D.Md. 2003), aff'd, 98 F.App'x. 253 (4th Cir. 2004).

8

The PLRA's exhaustion requirement serves several purposes, including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones v. Bock, 549 U.S. 199, 219 (2007); see Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). By design, prisoners must pursue administrative grievances through all available appeals until they receive a final denial of the claims. Chase, 286 F.Supp. at 530; Gibbs v. Bureau of Prisons, 986 F.Supp. 941, 943–44 (D.Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); see also Booth v. Churner, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); Thomas v. Woolum, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level").

An inmate need only exhaust "available" remedies. § 1997e(a). In Ross v. Blake, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA," rejecting a "special circumstances" exception to the requirement. 136 S.Ct. 1850, 1855–57 (2016). But the Court reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" Id. at 1855. An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" Id. at 1859 (quoting Booth, 532 U.S. at 738); see also Moore, 517 F.3d at 725 (noting an administrative remedy is not "available if a prisoner, through no fault of his own, was

9

prevented from availing himself of it"). Thus, an inmate must complete the prison's internal appeals process, if possible, before filing suit. See Chase, 286 F.Supp.2d at 529–30. Exhaustion is required before filing suits targeting unconstitutional conditions as well as those concerning unconstitutional conduct. See Porter, 534 U.S. at 528. Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. See Booth, 532 U.S. at 741 (requiring exhaustion even where prisoner only sought money damages, which he could not receive through the prison grievance process).

The Ross Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S.Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Here, Davis has not demonstrated that he has exhausted his administrative remedies. According to the sworn statement of CDF Informal Complaint Coordinator Sgt. Sheila Jefferson, CDF has an administrative process to address conditions of confinement, which is outlined in the CDF Detainee Handbook ("Handbook") provided to each detainee

upon arrival. (Jefferson Decl. ¶ 2, ECF No. 18-4; CDF Detainee Handbook ["Handbook"], ECF No. 18-5). The CDF administrative remedy process begins with an inmate's submission of an informal complaint, forms for which are in the Handbook and otherwise readily available to CDF detainees. (Jefferson Decl. ¶¶ 2, 4; Handbook at 63–64). Inmates "not satisfied with the informal complaint process . . . have the right to file a formal and final appeal in writing to the Warden." (Handbook at 63). The CDF Informal Complaint Index Log for the period of February 2017 to December 2018, lists no informal complaints submitted by Davis concerning the conditions of his confinement. (Jefferson Decl. ¶ 3). Davis offers no response to this evidence and has offered no evidence of his own to support his allegations that he filed complaints. Further, Davis admits he filed no appeals. As a result, the Court concludes that there is no genuine dispute of material fact regarding exhaustion of administrative remedies. The Court concludes that the PLRA's exhaustion requirement applies to Davis's Complaint and that, under Ross, he did not exhaust the administrative remedies available to him at CDF. Accordingly, with respect to the exhaustion issue, the Court will grant Defendants' motion, treated as one for summary judgment.

Because the Court has decided that Davis failed to exhaust his administrative remedies with respect to all of his claims, it would be premature for the Court to consider whether Davis has stated a claim against Defendants. Instead, the Court will dismiss the Complaint without prejudice to allow Davis to exhaust his administrative remedies and, if necessary, file a new lawsuit.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 18), construed, in part, as a motion for summary judgment. A separate Order follows.

_8/9/19_____   _____/s/_____
Date                George L. Russell, III
                    United States District Judge